IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-03052-CMA-KLM

JOSE MEDINA ESCOBAR,

      Plaintiff,

v.

WARDEN TRANI,
MAJOR HOLDITCH,
CAPTAIN HUERTAS,
LIEUTENANT TRAVIS,
LIEUTENANT TIDEMANN,
LIEUTENANT VANGELDER,
LIEUTENANT RUNDLE,
LIEUTENANT WILL,
SERGEANT LANGDON,
SERGEANT WAGNER,
SERGEANT COSSABONE,
SERGEANT CROSLEY,
SERGEANT WORTHEN,
SERGEANT REED,
SERGEANT BORDERS,
C/O GALLAGHER,
C/O AURITI,
C/O MCPHERSON,
C/O VIGIL,
C/O CASADY,
C/O WHITFIELD,
C/O GROOM,
C/O ESLINGER,
C/O CAMERON,
C/O CORTEZ,
C/O BODYCOMB,
C/O SPURLOCK,
C/O THORSTAD,
C/O SOLIZ,
C/O DICKENS, and
C/O FLICK,

      Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the following motions: Plaintiff's **Motion to Compel and Any Other Remedies the Court Deems Just and Proper** [Docket No. 27; Filed February 28, 2013] (the "Motion for Injunctive Relief"); Plaintiff's **Motion for an Order Preventing Further Irreparable Harm** [#29; Filed March 15, 2013] (the "Second Motion for Injunctive Relief"); and **Plaintiff's 3rd Motion for Preventive Relief From Assaults/Injury** [#31; Filed March 21, 2013] (the "Third Motion for Injunctive Relief," and, collectively with the Motion for Injunctive Relief and the Second Motion for Injunctive Relief, the "Motions"). On May 17, 2013, Defendants[1] filed a collective Response [#46] opposing the Motions. Plaintiff did not file Replies in further support of the Motions. The Motions are ripe for resolution. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C, the Motions have been referred to this Court for a recommendation regarding disposition. The Court has reviewed the Motions, the Response, the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court **RECOMMENDS** that the Motions be **DENIED**.

## I.  BACKGROUND

Plaintiff is a state prisoner incarcerated by the Colorado Department of Corrections ("CDOC") at the Colorado State Penitentiary ("CSP"). Plaintiff proceeds *pro se* in this

---

[1] "Defendants" refers to all served Defendants. Defendants Carl Holditch and "Theodore Solis" have not been served in this action.

case.[2]  Plaintiff is no stranger to litigation, however.   Plaintiff has filed at least fifteen

lawsuits in this District.[3]  Two of the fifteen lawsuits are ongoing before the undersigned.

In this case, Plaintiff brings a variety of claims against 31 individuals.  In the Complaint [#1][4]

Plaintiff asserts that each Defendant violated his First, Fifth, and Eighth Amendment rights.

*See Compl.* [#1] at 2-8.  With regard to his First Amendment claim, Plaintiff alleges both

retaliation and a "chilling" claim.   *Id.*   In support of these claims, Plaintiff includes both

general and specific allegations against the Defendants as follows:

General allegations:

- Plaintiff claims that Defendants have caused Plaintiff "severe physical and mental injuries [through a] series of actions, brutalities designed to punish/torture Plaintiff for seeking access to the Court, and/or for his civil litigations in the Court.  That the personal injuries . . . result from actions done by Defendants individually, and/or collectively through an agreement to prevent Plaintiff from seeking his equal protections of law or equal rights, [p]rivileges and immunities through force, violence and intimidation, and that several injuries to Plaintiff are a result of acts done in furtherance of a § 1983 conspiracy." *Id.* at ¶ 3.

- Plaintiff alleges that Plaintiff's placement in disciplinary administrative segregation for "20 plus years" was to punish Plaintiff and to "strip[ ] him of

---

[2]  The Court is mindful that it must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on his behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[3] Case Nos. 12-cv-03052-CMA-KLM, 12-cv-01662-CMA-CBS, 12-cv-00489-CMA-KLM, 11-cv-01443-CMA-KLM; 11-cv-00169-CMA-KLM; 10-cv-02050-CMA-KLM; 09-cv-02207-CMA-KLM; 08-cv-01992-ZLW; 06-cv-01222-CMA-KLM, 02-cv-01796-REB-BNB; 99-cv-01573-RPM; 96-cv-00107-RPM; 93-cv-01950-LTB; 91-cv-01580-RPM; 90-cv-00018-RPM.

[4]  Plaintiff filed a second, incomplete document titled "Prisoner Complaint" [#11].  However, since only the caption was included in the second document, the operative complaint is the original Complaint [#1].

his constitutional rights." *Id.* at ¶ 4.

- Regarding Defendants Holditch and Huertas,[5] Plaintiff alleges that since July 6, 2012, they have conspired to deprive him "from seeking his equal protections of law, or from enjoying the equal rights, privileges and immunities afforded all citizens under the laws of the United States." *Id.* at ¶ 13.

Allegations relating to video monitoring:

- During the period September 10, 2010 to July 6, 2010, when Plaintiff was at the Centennial Correctional Facility ("CCF"), the staff was under strict orders to use the "high security monitoring system" ("HSMS") which required staff members to use a handheld video camera to record all interactions with Plaintiff. *Id.* ¶ 5. Plaintiff alleges that "due to a claimed shortage of cameras Plaintiff is very often deprived of his food, showers, supplies, dirty laundry is not picked up, Plaintiff has had to wash his own clothes, his personal mail is not picked up, he's denied a phone and no one is allowed to speak to him without a camera present, his intercom is never answered." *Id.* ¶ 6.[6]

- Beginning on July 6, 2012, when Plaintiff was transferred to CSP, the administration at CSP implemented the same HSMS procedures as were used at CCF. *Id.* ¶ 7. Plaintiff claims that CSP staff were not properly trained in HSMS procedures and were not provided with enough cameras, "which has resulted in the denial of the 'minimal civilized measures of life's necessities' due to the deliberate indifference" of Defendants Trani, Holditch, and Huertas,[7] who Plaintiff alleges "have disregarded [the HSMS procedures], and have condoned, encouraged and supported their staff[']s severe camera abuse, placing the camera in Plaintiff's face, on his cell and shower door windows and monitoring his inter-cell private/personal functions" which Plaintiff claims is retaliation "against Plaintiff for exercising his constitutional[ly] protected rights." *Id.*

- Plaintiff alleges that beginning on July 6, 2012, Defendants Crosley, Casady, Vigil, Whitfield, Groom, Cameron, Eslinger, Bodycomb, and Cortez caused the Plaintiff "harm, mental and emotional distress in retaliation for his First Amendment activities" by disregarding the HSMS. *Id.* at ¶ 15. Plaintiff

---

[5]  Plaintiff also includes an individual named Turner in this allegation but there is no Defendant named Turner in this action.

[6]  This allegation appears to be leveled at the CCF staff generally.

[7]  Plaintiff again includes an individual named Turner in this allegation.

appears to claim that these Defendants' use of the HSMS is in retaliation for Plaintiff's exercise of his First Amendment rights. *Id.* at ¶ 16. Plaintiff also claims that these Defendants' "severe camera abuse" was "done in the furtherance of the conspiracy." *Id.*

- Plaintiff claims that on August 8, 2012, Defendant Crosley "refused the Plaintiff his breakfast meal claiming she didn't have a camera and taunted him to snitch her off." *Id.* at ¶ 19. Plaintiff claims Defendant Crosley was motivated by race and also retaliated against Plaintiff for his protected conduct. *Id.* Plaintiff also believes that Defendant Crosley's actions were in furtherance of the conspiracy in which he alleges other Defendants participated. *Id.*

- Plaintiff alleges that on August 12, 2012, Defendant Groom threatened to physically harm Plaintiff and "began a daily intentional infliction of mental and emotional distress through" misuse of cameras which did not comply with the HSMS protocols. *Id.* at ¶ 21.

- Plaintiff further alleges that on August 31, 2012, Defendant Crosley harassed Plaintiff without turning on the video camera. *Id.* at ¶ 28. Plaintiff claims that Defendant Crosley only turned the video camera on to record Plaintiff's response. *Id.* Plaintiff believes Defendant Crosley did this so she could prevent him from "progressing to level III." *Id.*

<u>Allegations that Plaintiff was threatened</u>:

- Plaintiff alleges that during the period July 6-22, 2012, Defendants Gallagher, Auriti, and McPherson deprived Plaintiff of his breakfast and lunch meals through violence, threats, and intimidation. *Id.* at ¶ 11. Plaintiff further alleges that Defendants Gallagher, Auriti, and McPherson "took adverse action against Plaintiff for his protected conduct, which was motivated in part by his race and for exercising his First Amendment rights." *Id.*

- Plaintiff also alleges that Defendant Gallagher threatened him on July 18, 2012, in retaliation for protected conduct. *Id.* at ¶ 12. Plaintiff claims the retaliatory conduct was in part motivated by race. *Id.*

- Plaintiff claims that Defendant Crosley allowed Defendants Gallagher and Spurlock to threaten Plaintiff in retaliation for Plaintiff filing a lawsuit against Defendant Gallagher and additional CSP employees. *Id.* at ¶ 28.

- Plaintiff further alleges that beginning on October 19, 2012, Defendants Crosley, Groom, and Eslinger threatened Plaintiff with injury and intimidation which has resulted in Plaintiff being deprived of "2 and/or 3 meals" per day. *Id.* at ¶ 33. Plaintiff alleges that the threats are in retaliation for Plaintiff's

exercise of his First Amendment rights by bringing suit against these Defendants' friends. *Id.* Plaintiff also claims that these Defendants' actions are "in furtherance of their conspiracy." *Id.*

Allegations of physical harm:

- Plaintiff claims that on June 19, 2012, Defendants Langdon, Spurlock, and Thorstad used excessive force when escorting Plaintiff to his cell. *Id.* at ¶ 17. He alleges that these Defendants' handcuffing and handling of Plaintiff caused "severe laceration/welts on Plaintiff[']s wrists [and] biceps." *Id.* The Complaint further alleges that Defendant Tidemann denied Plaintiff medical attention for these alleged injuries. *Id.* Plaintiff believes the injuries and the denial of medical attention were in retaliation for Plaintiff's filing of grievances and his pending lawsuits. *Id.* Plaintiff also alleges that these Defendants "were motivated by the Plaintiff's race." *Id.*

- Regarding Defendants Travis, Tidemann, Wagner, Soliz,[8] Cossabone, McPherson, and Spurlock, Plaintiff claims that they turned off the water to his cell and told him that he had to ask for permission for drinking water. *Id.* ¶ 18. Plaintiff claims that when he asked for water they refused. *Id.* Plaintiff also claims that these Defendants took away his diabetes medication. *Id.* Plaintiff alleges that these actions were motivated by his race and that these Defendants were also retaliating for Plaintiff's "protected conduct." *Id.*

- Plaintiff alleges that on August 19, 2012, Defendant Groom and an individual named McHenry[9] "severely squeezed" Plaintiff's biceps while escorting him to his cell. *Id.* at ¶ 22. He claims this left "severe welts/bruising" and that these individuals denied him medical attention. *Id.* Plaintiff avers that these individuals' actions were in retaliation for Plaintiff's filing of grievances and/or lawsuits. *Id.*

- Plaintiff also claims that on August 21, 2012, Defendant Dickens and an individual named Crooks[10] escorted him to the eye exam room. *Id.* at ¶ 23. Plaintiff alleges that Defendant Dickens "cranked the cuffs down extremely tight causing instant excruciating pain." *Id.* Plaintiff claims that the overly tight handcuffs were kept on him for another 40 minutes and that neither Defendant Dickens nor Defendant Worthen would loosen the handcuffs. *Id.* Plaintiff claims these two Defendants also denied him medical attention when

---

[8]  Plaintiff's spelling is "Soliz;" Defendants use "Solis."

[9]  McHenry is not a defendant in this action.

[10]  Crooks is not a defendant in this action.

he requested it. *Id.* Plaintiff claims that a different prison employee later took Plaintiff to receive medical attention for his wrists and filled out an incident report at the prison. *Id.* at ¶ 24. Plaintiff claims that he had a disciplinary hearing for an allegation that his reporting of this incident was false. *Id.* at ¶ 25. Plaintiff states that he "was found not guilty." *Id.*

- Regarding Defendant Eslinger, Plaintiff claims that "for over 22 months [he] used hand-cuff abuse on Plaintiff." *Id.* at ¶ 27. Plaintiff also claims that on August 30, 2012, Defendant Eslinger "cranked the cuffs down until [Plaintiff] yelled and complained" and then Defendant Eslinger and Defendant Whitfield "grabbed and squeezed Plaintiff's biceps simultaneously." *Id.* Plaintiff believes these Defendants did this in retaliation for "his prior grievance and/or lawsuits." *Id.*

- Plaintiff further alleges that on September 12, 2012, Defendants Flick and Reed "cranked down the cuffs to inflict unnecessary and wanton pain" and that they "squeezed Plaintiff's biceps simultaneously to inflict further pain." *Id.* at ¶ 26. Plaintiff claims that both Defendants refused his request for medical attention. *Id.* Plaintiff alleges that these Defendants acted "in furtherance of their conspiracy." *Id.*

- Plaintiff claims that on October 19, 2012, Defendant Crosley injured Plaintiff's right ring finger when she pulled too hard while collecting his laundry bag. *Id.* at ¶ 29. Plaintiff alleges that Defendant Crosley then wrote him up which prevented him from "progressing to level III." *Id.* Plaintiff appears to allege that some CSP employees denied him access to medical attention relating to this incident. *Id.* Plaintiff claims that Defendant Crosley also did not follow the HSMS protocols and only recorded Plaintiff's reaction to the incident. *Id.* at ¶ 30.

- Plaintiff also claims that after reviewing the "sprite system unit video,"[11] Defendant Vangelder threatened that if Plaintiff filed a claim against Defendant Crosley relating to the October 19, 2012 incident, Defendant Vangelder would file a report stating that Plaintiff filed a false report. *Id.* Plaintiff alleges the Defendant Vangelder threatened him with false charges which Plaintiff believes is "an infringement on Plaintiff's protected conduct." *Id.* at ¶ 31. He further claims that Defendants Crosley and Vangelder were motivated to take "adverse action" against him both because of his race and his protected conduct. *Id.* at ¶ 32. Plaintiff alleges that both Defendants acted "in furtherance of their conspiracy." *Id.*

---

[11] This appears to be a video surveillance system at CSP. Plaintiff claims the sprite system unit video "is unreliable for the rear-cells of each Pod." *Id.* at ¶ 31.

<u>Other allegations</u>:

- Plaintiff also alleges that on June 26, 2012, Defendants Travis, Tidemann, Wagner, Soliz, Cossabone, McPherson, and Spurlock confiscated his legal papers relating to Civil Action No. 09-cv-02207-CMA-KLM "for no penological [sic] justification other than to cause the Plaintiff irreparable harm." *Id.* at ¶ 18.

- Plaintiff claims that on August 12, 2012, Defendants Casady and Vigil deprived him of his breakfast meal in retaliation for "his protected conduct, and/or in furtherance of the conspiracy." *Id.* at ¶ 20.

- Plaintiff alleges that upon his return to CSP on July 6, 2012, Defendant Borders refused to exchange his worn-out shoes for new shoes. *Id.* at ¶ 34. He claims that Defendant Borders has denied him shoe exchanges in the past and that the old shoes Plaintiff is forced to wear cause him pain. *Id.*

- Plaintiff further claims that when delivering his meals Defendant Crosley threatened to injure Plaintiff if he filed a lawsuit against her. *Id.* at ¶ 29.[12] Plaintiff also alleges that Defendants Crosley, Groom, and Eslinger claimed they has contaminated Plaintiff's meal with feces. *Id.* Plaintiff claims these actions were done in retaliation for Plaintiff exercising his First Amendment rights. *Id.*

In sum, Plaintiff brings the following claims against Defendants: (1) First Amendment retaliation and a violation of his First Amendment right to access the courts; (2) violations of his Fifth Amendment rights to due process and equal protection excessive force; (3) cruel and unusual punishment, and retaliation pursuant to the Eighth Amendment; and (4) state law claims of intentional infliction of mental and emotional distress and outrageous conduct.[13] *See generally Compl.* [#1].  In the Complaint, Plaintiff requests monetary damages, a declaratory judgment stating that his rights were violated, and unspecified injunctive relief. *Id.* at 30-31.

---

[12] Paragraph 29 of the Complaint [#1] is continued on page 17.

[13] Plaintiff includes these state law claims with his Eighth Amendment claim in the Complaint, but the Court will treat them as distinct claims. *See Compl.* [#1] at ¶¶ 60-76.

8

In the Motion for Injunctive Relief, Plaintiff recites a litany of "kitchen sink"-style allegations, relating to Defendants', and "every CSP official['s]" use of cameras to monitor Plaintiff's interactions with them. *See Motion for Injunctive Relief* [#27] at ¶ 5-7. Plaintiff also brings new allegations against nonparties. *See id.* at ¶ 10 (describing harassment by other inmates), ¶ 12 (allegations against Officer Gonzales regarding injuries related to handcuffing), ¶ 14 (listing CDOC employees not named in the Complaint). In addition, Plaintiff revisits his allegations against certain Defendants as follows:

- Plaintiff claims that Defendants Trani, Spurlock, Crosley, Will, Groom, Eslinger, Casady, Cameron, Cortez, "along with their agents . . . have a meeting of the minds , an effective conspiracy to prevent the Plaintiff through force, violence and intimidation from seeking his equal protections of law, and from enjoying his equal rights, privileges and immunities afforded all U.S. citizens, and that personal injury has resulted . . ." *Id.* at ¶ 14.

- Plaintiff also alleges that Defendants "and their agents are pregnant with discrimination due to Plaintiff's civil litigations . . ." *Id.* at ¶ 15.

Plaintiff asks the Court to grant any relief the Court "deems just and proper . . . to prevent further risk of serious harm and psychopathological disorders." *Id.* at 4.

In the Second Motion for Injunctive Relief, Plaintiff makes additional allegations regarding the claims asserted in his Complaint, *see, e.g.*, *Second Motion for Injunctive Relief* [#29] at ¶ 4 (allegation that Defendant Crosley deprives Plaintiff of meals), and makes allegations against third parties, *see id.* at ¶ 3 (allegation about treatment by Officer Hodge), ¶ 4 (allegation that individual named Maher deprives Plaintiff of meals). The bulk of the Second Motion for Injunctive Relief, however, is focused on informing the Court about the government's obligation to ensure that his rights are protected while he is incarcerated. *Id.* at ¶¶ 6-8. In addition, Plaintiff expands upon his claims relating to the use of cameras to monitor his interactions with CDOC staff. *Id.* at ¶¶ 9-10, 12. Finally, Plaintiff

also revisits his allegations of excessive force and deliberate indifference to his medical needs.  *Id.* at ¶ 11.   Plaintiff asks the Court to "issue an order to protect the physical and mental health of the Plaintiff, from the conspiratorial acts of the Defendants and/or their agents . . ." *Id.* at 3.

In the Third Motion for Injunctive Relief, Plaintiff alleges that Defendants have retaliated against him for filing the Motion for Injunctive Relief and the Second Motion for Injunctive Relief.  *See Third Motion for Injunctive Relief* [#31] at ¶ 1.  Plaintiff details two interactions on March 16, 2013 with an individual named Maher who is not a defendant in this action.  *Id.* at ¶¶ 2-3.  The later incident also included third parties Olivett, Emrich, and McKinley.   *Id.* at ¶ 3.   Plaintiff also describes an incident that occurred that day that included Plaintiff and third parties McKinley and Emrich, but no Defendants.  *Id.* at ¶ 4. Plaintiff again reminds the Court that the state has an obligation to protect inmates from attack and asks the Court for "a ruling in these matters."  *Id.* at 2.[14]

Plaintiff seeks Court intervention "preventing the Defendants and/or their agents from subjecting the Plaintiff from further physical and mental irreparable harm," *Second Motion for Injunctive Relief* [#29] at 1, and (2) issuance of an order "to protect the physical and mental health of the Plaintiff, from the conspiratorial acts of the Defendants and/or their agents . . ."  *Id.* at 3.   Therefore, in consideration of the Court's obligation to liberally construe *pro se* filings, the Court will treat the Motions as a request for a preliminary injunction and/or a temporary restraining order.

Defendants filed one Response [#46] to all three Motions.   In their Response,

---

[14] Plaintiff mentions the Fourteenth Amendment and the Eighth Amendment in support of his Third Motion for Injunctive Relief.  *See id.* at ¶ 6.

10

Defendants argue: (1) the injunction Plaintiff seeks is mandatory, and, therefore, is disfavored, *Response* [#46] at 5; (2) Plaintiff fails to show a substantial likelihood of success on the merits of the case, *id.* at 5-7; (3) an injunction is not warranted because there is no irreparable injury to Plaintiff, *id.* at 7-10; (4) any potential injury to Plaintiff does not outweigh the injury to Defendants that will occur if a preliminary injunction issues, *id.* at 10-11; and (5) issuance of an injunction would be adverse to the public interest, *id.* at 11.

## II.  ANALYSIS

Plaintiff seeks a preliminary injunction and/or temporary restraining order "preventing the Defendants and/or their agents from subjecting the Plaintiff from further physical and mental irreparable harm," *Second Motion for Injunctive Relief* [#29] at 1, and (2) issuance of a preliminary injunction "to protect the physical and mental health of the Plaintiff, from the conspiratorial acts of the Defendants and/or their agents . . ." *Id.* at 3.  Plaintiff alleges, among other things, that since returning to CSP in July 2012 from the mental health security ward, Defendants have acted to punish him, inflict pain and mental distress upon him, strip him of his constitutional rights and prevent him from pursuing his pending legal actions.

### 1.    Relevant Background

Additional background information is relevant due to Plaintiff's frequent filings in this Court.  Not only has Plaintiff filed at least 15 lawsuits in this District, he has also asserted similar allegations in many of those lawsuits.  For example, in *Escobar v. Jones, et al*, No. 09-cv-02207-CMA-KLM, Plaintiff brought claims against 27 individuals asserting that defendants violated his constitutional rights by denying him food, sleep, medication, intentionally inflicting pain and torture upon him by hurting his hands and testicles,

11

intentionally inflicting mental pain upon him, using excessive force against him, filing false prison disciplinary charges against him, depriving him of medical care, and retaliating against him for filing grievances and lawsuits. *See generally* No. 09-cv-02207-CMA-KLM, Docket No. 29-3 (Third Amended Complaint). *Escobar v. Jones* resulted in a grant of partial summary judgment and a jury verdict in favor of the remaining defendants on these allegations. *See* No. 09-cv-02207-CMA-KLM, Docket Nos. 150 (Order granting in part and denying in part motion for summary judgment), 205 (Jury Verdict Form), and 206 (Final Judgment). The jury was specifically asked if Plaintiff proved by a preponderance of the evidence that the defendants deprived him of food and, as to each of the three remaining defendants, the jury found that Plaintiff did not offer sufficient evidence to prove his claim. *See* No. 09-cv-02207-CMA-KLM, Docket No. 205 (Jury Verdict Form).

In addition, in the instant action, on May 10, 2013, Defendants filed their Motion to Dismiss Pursuant to 28 U.S.C.A. § 28 1915(e)(2)(B)(i) [#41] to which they attached the Affidavit of Dr. Timothy Creany, a doctor employed by the CDOC, who states that he "found no evidence that Mr. Escobar has been systematically physically or sexually abused by prison staff in the medical records from January 1, 2001, to the present." *Creany Aff.* [#41-12] at ¶ 20. Dr. Creany also "found no evidence or documentation of any significant bruising, swelling, cuts, [or] scrapes, on his hands and wrists." *Id.* at ¶ 21. He notes that while Plaintiff has been examined by medical staff when he has claimed abuse by prison personnel, the medical staff has not found signs of any significant injuries or abuse by prison personnel. *See id.* at ¶¶ 22-25. Finally, Dr. Creany notes that Plaintiff has not reported to medical staff that prison personnel have denied Plaintiff food or made his food inedible by contaminating it. *See id.* at ¶ 30. Dr. Creany then discusses Plaintiff's weight

12

which has varied by approximately 30 pounds since 1993. *See id.* at ¶ 29-33.

**2.    Legal Standard**

Fed. R. Civ. P. 65(a) and (b) govern preliminary injunctions and temporary restraining orders. "Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction." *Emmis Commc'ns Corp. v. Media Strategies, Inc.*, No. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citing 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2951 (2d ed.1995)). Here, because Defendants were given notice and an opportunity to respond, the Court analyzes the Motions under the standard for issuance of a preliminary injunction.

Injunctive relief is an extraordinary remedy that should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting injunctive relief must clearly establish the following: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Id.* It is well-established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted).

"The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held." *Bray v. QFA Royalties LLC*, 486 F. Supp. 2d 1237, 1241 (D .Colo. 2007) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).  "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Schrier*, 427 F.3d at 1267.  Moreover,

> [b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits.

*Id.* at 1258-59 (citations omitted).   These disfavored injunctions are "more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."  *Id.* at 1259.

### 3.    Analysis

As noted above, Plaintiff seeks a preliminary injunction "preventing the Defendants and/or their agents from subjecting the Plaintiff from further physical and mental irreparable harm," *Second Motion for Injunctive Relief* [#29] at 1, and (2) issuance of a preliminary injunction "to protect the physical and mental health of the Plaintiff, from the conspiratorial acts of the Defendants and/or their agents . . ."  *Id.* at 3.  Among other things, Plaintiff appears to be seeking an end the use of cameras to monitor prison employees' interactions with him, additional training for prison employees who use cameras to monitor their interactions with Plaintiff, or provision of additional cameras so that Plaintiff's alleged needs

14

to interact with prison staff can be promptly met. *See Motion for Injunctive Relief* [#29] at 2-3 ("There are no protocols or procedures in place to counter the ongoing 30 to 40 daily illegal contacts of camera-abuse by prison officials . . . .   The Defendants and their agents have been aware and have consciously disregarded the illegal technique of camera-abuse . . ."). Thus, the relief Plaintiff seeks would alter the status quo rather than preserve it. *See Schrier*, 427 F.3d at 1260 ("the status quo is the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing.").   The injunction is also mandatory because "the requested relief affirmatively requires the nonmovant to act in a particular way, and as a result . . . places the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction." *Id.* at 1261 (internal quotation and modifications omitted). Therefore, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *See id.* (citation omitted).  Accordingly, the Motions must be denied unless Plaintiff's "right to relief [is] clear and unequivocal." *Id.* at 1258 (citation omitted).

Additionally, the law is well-established that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976).  Courts should grant injunctive relief involving the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 269-70 n.2 (4th Cir. 1994); *see also Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980).  Indeed, the Court of Appeals for the Tenth Circuit has stated that

it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems.  It is a delicate role assigned to the federal courts to display that restraint so necessary in the maintenance of proper federal-state relations." *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (quotation omitted).  As such, "intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts. . . . [This] is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made." *Taylor*, 34 F.3d at 269 (citations omitted).

### a.    Irreparable Harm

To obtain injunctive relief, Plaintiff must first show that he will suffer irreparable harm if his request for injunctive relief is denied.  *Schrier*, 427 F.3d at 1258.  "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'" *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  Irreparable harm is more than "merely serious or substantial" harm. *Id.* (citation omitted).  The party seeking the preliminary injunction "must show that the injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (quotation omitted).  Therefore, to demonstrate irreparable harm, Plaintiff "must establish both that harm will occur, and that, when it does, such harm will be irreparable." *Vega v. Wiley*, 259 F. App'x 104, 106 (10th Cir. 2007).  Finally, an injunction is only appropriate "to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to

occur at some indefinite time in the future." *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931).

The Court finds that Plaintiff has failed to show that he will suffer irreparable harm if his request for injunctive relief is denied.  First, in support of the requested relief, Plaintiff makes general allegations against certain Defendants that appear to simply bolster the allegations in the Complaint [#1].  *See Motion for Injunctive Relief* [#29] at ¶ 14 (Plaintiff claims that Defedants Trani, Spurlock, Crosley, Will, Groom, Eslinger, Casady, Cameron, Cortez, "along with their agents . . . have a meeting of the minds, an effective conspiracy to prevent the Plaintiff through force, violence and intimidation from seeking his equal protections of law, and from enjoying his equal rights, privileges and immunities afforded all U.S. citizens, and that personal injury has resulted . . ."), ¶ 15 (Defendants "and their agents are pregnant with discrimination due to Plaintiff's civil litigations . . ."); *Second Motion for Injunctive Relief* [#29] at ¶ 4 (allegation that Defendants Crosley deprived Plaintiff of meals and medication),  ¶¶ 9-10, 12 (expansion of claims relating to the use of cameras to monitor his interactions with CDOC staff), ¶ 11 (revisiting his allegations of excessive force and deliberate indifference to his medical needs).  Plaintiff's provision of additional information in support of his Complaint does not establish irreparable harm that is actual or even likely.  *See Schrier*, 427 F.3d at 1267 (stating that "an injury must be certain, great, actual and not theoretical" to constitute irreparable harm for the purpose of imposing a preliminary injunction) (citation omitted); *see also Bray v. QFA Royalties LLC*, 486 F. Supp. 2d 1237, 1241 (D. Colo. 2007) ("The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held.") (citing

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).

Second, in support of the requested relief Plaintiff also makes allegations of harm resulting from actions of third parties. *See Motion for Injunctive Relief* [#27] at ¶ 12 (allegations against Officer Gonzales regarding injuries related to handcuffing); *Second Motion for Injunctive Relief* [#29] at ¶ 3 (allegation about treatment by Officer Hodge), ¶ 10 (allegations that inmate in neighboring cell bangs on the wall to keep Plaintiff from sleeping); *see Third Motion for Injunctive Relief* [#31] at ¶¶ 2-3 (describing two interactions on March 16, 2013 with nonparty Maher: (1) at approximately 6:10 a.m. Maher picked up Plaintiff's breakfast tray and said "You'll be sorry," and (2) Maher applied "unnecessary force/pain" to Plaintiff's right bicep while escorting Plaintiff to the shower), ¶ 3 (March 16, 2013 incident involving Olivett, Emrich, and McKinley), ¶ 3 (second incident involving McKinley and Emrich).  These individuals are not named Defendants in this action.  *See generally Complaint* [#1].  The Court has limited authority to grant injunctive relief against nonparties, and the circumstances permitting such relief are not present here.  *See* Fed. R. Civ. P. 65(d) ("Every order granting an injunction . . . binds only . . . the parties . . . .");[15] *see also Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (affirming the denial of a motion for preliminary injunction on the basis that the incarcerated *pro se* plaintiff had not "alleged that the defendants named in the complaint participated in the alleged deprivations

---

[15] Fed. R. Civ. P. 65(d)(2) also includes a provision permitting the issuance of a preliminary injunction against "other persons who are in active concert or participation" with the parties to a case.  Here, Plaintiff has not demonstrated that any of the Defendants are in active concert or participation with Officer Gonzales, Officer Hodge, Olivett, Emrich, McKinley, or the neighboring inmate. See *Teague v. Hood*, No. 06-cv-01800-LTB-CBS, 2008 WL 2228905, at *16 (D. Colo. May 27, 2008) ("Rule 65(d) entails proof of collusion or treatment of these officials as the Defendants' 'alter ego.'") (citing *Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.2d 372, 377 (10th Cir. 1996)).

. . . ."). Accordingly, Plaintiff's allegations that he will suffer irreparable harm are insufficient to support injunctive relief here.

Moreover, the Court finds that even if the incidents alleged involved parties to this action, Plaintiff has failed to show that future physical injury is certain or even likely.  First, injunctive relief is generally not appropriate to address post-complaint conduct. *Teague*, 2008 WL 2228905, at *16 (noting that injunctive relief should not lie to address conduct that occurred after complaint was filed).   Second, these allegations do not satisfy Plaintiff's burden of showing "that 'the injury complained of is of such imminence that there is a clear and present need for equitable relief' to prevent irreparable harm."  *Heideman*, 348 F.3d at 1189 (citation omitted).   The incidents Plaintiff describes involved a variety of prison personnel and another inmate.  Plaintiff presents nothing beyond his own speculation to show that the persons involved acted pursuant to a common plan to cause harm to Plaintiff. Thus, there is no basis for the Court to conclude that future harm is imminent.

Therefore, the Court concludes that Plaintiff's allegations fail to demonstrate a risk of harm that is more than "merely serious or substantial."  *See id.* at 1189.  By failing to show that absent an injunction he will suffer irreparable harm, Plaintiff has not met his burden of establishing a right to injunctive relief.  *See Dominion*, 356 F.3d at 1260 (noting that without irreparable harm, injunctive relief is not available).  Nevertheless, in the interest of completeness, the Court briefly addresses the remaining factors used to determine whether a preliminary injunction should enter.

### b.    Balance of Harm and Public Interest

In order to be entitled to entry of a preliminary injunction, Plaintiff must demonstrate

that "the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier*, 427 F.3d at 1258 (citation omitted).  Plaintiff has failed to do so. Plaintiff does not address the impact of his requested injunction on the public interest, nor does he address the balance of harm.   Plaintiff appears to assume that the Court can control Defendants' conduct with minimal adverse impact on them and on the safe, effective functioning of the prison.  This assumption fails to take into account the important issue of the financial and logistical burdens that would be imposed on Defendants if they were ordered to treat Plaintiff any differently.  As noted above, the Court's interference with Defendants' day-to-day decisions regarding how to manage Plaintiff, particularly to the extent that Plaintiff's requested relief would deviate from how Defendants manage all other inmates, would significantly undermine their discretion and autonomy. *See Taylor*, 34 F.3d at 269-70.

Additionally, the Court notes that the public would ultimately have to bear the cost of any action specifically required from Defendants.  Although such cost may be minimal in this isolated case, the Court finds that the public interest is best served by maintaining the bright-line rule that Court interference is limited to only those extreme cases where irreparable injury is clear.  The Court's monitoring of and control over Defendants' day-to-day treatment of Plaintiff would be adverse to the public interest.  Accordingly, the Court finds that Plaintiff has failed to show that "the injunction, if issued, would not be adverse to the public interest." *Schrier*, 427 F.3d at 1258; *see Teague*, 2008 WL 2228905, at *17 (noting that the public is adversely impacted by "the court monitor[ing] such matters as

making copies, showering, verbal harassment, television, recreation, cleanliness of cells, [and] assignment of cells").

### c. Substantial Likelihood of Success on the Merits

To obtain a preliminary injunction, Plaintiff must show that he has a substantial likelihood of success on the merits of his claims. *Schrier*, 427 F.3d at 1258. While in the Motions Plaintiff does allege new facts in further support of his claims, Plaintiff does not address his likelihood of success on the merits of his claims. Therefore, the Court finds Plaintiff's showing of a substantial likelihood of success on the merits to be insufficient. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 191) (holding that a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based"); *Bryant v. NFL, Inc.*, No. 07-cv-02186-MSK-MJW, 2007 WL 3054985, at *2 (D. Colo. Oct. 18, 2007) (holding that conclusory allegations will not support a motion for injunctive relief). This factor therefore fails to support the issuance of a preliminary injunction.

Plaintiff has failed to show a substantial risk of irreparable harm along with the other three prerequisites for obtaining a preliminary injunction.

### III. CONCLUSION

Accordingly,

The Court respectfully **RECOMMENDS** that Plaintiff's Motions [##27, 29, 31] be **DENIED.**

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen

(14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b);  *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  August 16, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge